IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Montour            :
                                   :
           v.                 :
                                   :
Hadden, LLC,             :   No. 60 C.D. 2021
           Appellant     :   Submitted:  May 6, 2022


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED:  August 16, 2022


Hadden, LLC (Hadden) appeals from the 26th Judicial District, Montour County (County) Branch, Common Pleas Court's (trial court) December 8, 2020 order granting the County's Petition of Conservator for Order of Sale Free and Clear of Liens and Distribution of Proceeds (Sale Petition) pursuant to Section 9 of the Abandoned and Blighted Property Conservatorship Act (Act 135).[1]  Hadden presents one issue for this Court's review: whether the trial court erred by granting the Sale Petition, when Hadden presented substantial evidence that the sale's terms and conditions were not acceptable nor reasonable under Act 135.  After review, this Court affirms.

In 2013, Hadden purchased the Days Inn located at 34 Sheraton Road, Danville, Pennsylvania (Property).  On January 31, 2020, the County filed a Petition for the Appointment of a Conservator Pursuant to Act 135 (Conservator Petition) because the Property had become blighted beyond repair, an eyesore to the

---

[1] Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. § 1109.

community, unusable, and unsalvageable. By March 31, 2020 stipulated order, the trial court granted the Conservator Petition and appointed DRIVE, an economic development council of Columbia and Montour Counties' governments, as conservator (Conservator). By May 29, 2020 order, the trial court approved the Conservator's Application for Final Plan that consisted of Requests for Proposals (RFP) – Property Purchase, Demolition, and Redevelopment. *See* Reproduced Record (R.R.) at 17a-21a.

On October 14, 2020, the Conservator filed the Sale Petition. *See* R.R. at 9a-16a. Hadden filed an Answer thereto, consisting of general denials. On December 8, 2020, the trial court held a hearing to determine whether the Property should be sold to the Conservator's proposed buyer, The Liberty Group (Liberty Group), free and clear of all liens. At the hearing, the Conservator presented DRIVE's Executive Director, Jennifer Wakeman (Wakeman), who described the Conservator's efforts to find a buyer for the Property, opined as to the Property's fair market value, and testified as to the considerable cost to demolish the blighted, unsalvageable motel, and to remove the debris.

In response, Hadden President Pirian Sivakumar (Sivakumar) related, for the first time in this process, a proposal for the sale of the Property (Proposal). The Proposal included a higher fair market value and a considerably lower demolition and removal cost. Hadden also presented its proposed buyer Jaspreet Sandhu (Sandhu), who testified that she owns, among other businesses, GJAMS, LLC (GJAMS), located at 27 Sheraton Drive (the Super 8 Motel), Danville, Pennsylvania, and that GJAMS is interested in purchasing the Property. Sandhu further reported that she had experience owning commercial properties, that she was

2

an acquaintance of Hadden's principals, and that she intended to purchase the Property for cash.[2]

By December 8, 2020 order, the trial court granted the Sale Petition. Hadden appealed to this Court.[3] On February 9, 2021, Hadden filed a Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On March 17, 2021, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).[4]

Hadden argues that the evidence it presented at the hearing demonstrated that the terms of the Conservator's proposed sale were ostensibly unacceptable and unreasonable within the meaning of Section 9 of Act 135. The County rejoins that Hadden agreed to all of the procedures followed by the County and the Conservator throughout the course of this case. The County contends that it was only when Hadden was disappointed in the Conservator's proposed sale price that Hadden first objected. The County asserts that the trial court properly concluded that Hadden offered no viable alternative to the proposed sale, the trial court had ample factual and legal basis for its decision, and the trial court did not abuse its discretion.

Initially, Section 9(b) of Act 135 provides:

> **Sale by conservator.--**Upon application of the conservator, the court may order the sale of the property if the court finds that:

---

[2] However, the proposal "was not close to concrete. The proposed buyer had no viable financial plan. At best, the proposed buyer's plans were preliminary, and without a realistic foundation." R.R. at 7a (Trial Ct. Op. at 2).

[3] "Our review is limited to determining 'whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case.' *In re Conservatorship Proceeding In Rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 459 n.6 (Pa. Cmwlth. 2010)." *City of Bethlehem v. Kanofsky*, 175 A.3d 467, 475 n.8. (Pa. Cmwlth. 2017).

[4] Appellees CNB Bank (one of the Property's lien holders) and the Conservator filed Notices of Non-Participation.

(1) Notice and an opportunity to provide comment to the court was given to each record owner of the property and each lienholder.

(2) The conservator has been in control of the building for more than three months and the owner has not successfully petitioned to terminate the conservatorship under [S]ection 10 [of Act 135, 68 P.S. § 1110 (relating to termination of conservatorship)].

(3) **The terms and conditions of the sale are acceptable to the court**, and the buyer has a reasonable likelihood of maintaining the property.

68 P.S. § 1109(b) (emphasis added).

Here, Hadden asserts that it presented evidence at the hearing demonstrating that the Conservator's proposed sale was unreasonable. Specifically, Hadden directs this Court to Sivakumar's testimony, wherein he stated that he purchased the Property for $4,800,000.00. However, in answer to the question, "How much did you pay for this [P]roperty?" Sivakumar responded: "Two million." R.R. at 129a. Clearly, Hadden is referring to the following exchange, wherein Sivakumar explained:

Q. Are you acquainted or familiar with the [Property] that is the subject of this [Sale P]etition today?

A. Yes.

Q. What can you tell the [trial c]ourt about the [Property] itself?

A. The [Property] was very -- at the time it was purchased in 2013 appraised of the hospitality industry [sic] a price for $4.8 million with the building. The land is two million and the building is 2.8 million. That is in 2013. Over the years, six, eight years, the value has been increased at least two to four percent in that market. And then also it has to be – the appraisal has to be done by the hospitality investment because it's a high location. It should be done according to the testimony if it isn't done by the hospitality, it's done by the local appraisal company.

4

They're always less than the hospitality value and the bank value.

R.R. at 130a.

Hadden also directs this Court's attention to Sivakumar's testimony concerning the cost of demolition, wherein he declared:

Q. Did you obtain a quote or estimate for the demolition of the [P]roperty in question?

A. Yes.

Q. Can you tell the [trial c]ourt who provided that estimate?

A. I built a hotel in Columbia County, the builders give [sic] me the estimate, between [$]250,000[.00] and [$]285,000[.00]. That is to take the building down and make the ground [sic] to do a new hotel.

Q. What about debris, the removal?

A. Everything move out of the area.

Q. So that's all inclusive with 350 to 380?

A. No, 250 to 285.

Q. Thousand?

A. That's correct.

. . . .

Q. And when did he give you this estimate?

A. He was working with me last year, 2019.

Q. So some time last year he provided that quote?

A. Correct.

R.R. at 134a-135a.

5

Concerning the sales price, Sivakumar described:

Q. Were you approached by a prospective purchaser who is interested in this [P]roperty?

A. Yes.

Q. And who is that individual?

A. [Sandhu].

Q. Have you negotiated a price for this [P]roperty?

A. Correct.

Q. What is the price?

A. Half a million dollars.

Q. Would that include demolition? Are they willing to undertake demolition?

A. That's correct.

Q. And that's exclusive of the [$]500,000[.00]? In other words, they would have to pay that separately?

A. Yes.

R.R. at 137a.

However, Wakeman testified:

Q. So turning your attention to the development of the plan, in connection with development of the plan, at some point did you obtain an appraisal of the [P]roperty?

A. We did. That was early on in the process. We had both an environmental study done and an appraisal done on the [P]roperty.

Q. Who did the appraisal?

A. The appraisal was done by Dean Lacrosse [(Lacrosse)], that was the gentleman's name, and he works for – I always forget the company's name.

6

Q. Real Estate Appraisal and Marketing Services in Sunbury?

A. Yes.

 . . . .

Q. And this is an outfit that's well-known to the [C]ounty, they have been involved in a large number of commercial appraisals in the area here in recent years?

A. Yes.

Q. So with regard to that appraisal, what did [] Lacrosse and his firm come up with in terms of valuation and negative affects on valuation?

A. Their evaluation, their market value of the fee simple interest if the land were vacant was $775,000.00, and subtracted from that would be the cost of demolition. There was an estimate that was generated by Steinbaucher Enterprises [(Steinbaucher)] out of, I believe, Williamsport area and that was $727,355.00 just to take the building down. So we had a net value of $50,000.00 on the [P]roperty.

Q. And Steinbaucher in Williamsport, they're a firm of long-standing that's had a lot of experience in demolition and reconstruction?

A. Yes. In fact, they had already been asked -- we do not know by whom -- but they had been asked to generate an estimate for demolition several years prior to this on the same [P]roperty. So they were very familiar with this [P]roperty as well.

R.R. at 118a-120a.

According to the Sale Petition, Liberty Group offered to pay DRIVE $250,000.00 for the purchase of the Property. *See* R.R. at 12a. Liberty Group also offered to assume responsibility for demolition and removal of the existing structure at an estimated cost of $750,000.00. *See id*. Relative to Liberty Group, Wakeman recounted:

7

Q. When you got back this proposal from Liberty Group, did your organization do an evaluation as to whether they appeared to be financially and technically competent to carry out the plan?

A. Yes, we did. We had a meeting of our property commitment [sic] which is a subset of our board that was also attended by [the Conservator's] Attorney [Karen L.] Hackman. We reviewed the document that was received which included an array of good information, including financial information.

They had checked all of the boxes as far as the requirements of the RFP and we felt like the company had the ability to do what they said they were going to do.

R.R. at 122a-123a.

Based on the record evidence, the trial court granted the Sale Petition, reasoning:

First, the October 2020 [Sale Petition] states the precise details of the sale. Hadden's [A]nswer [thereto] contains general denials, thus admitting the facts set forth in the [Sale P]etition. *See* Pa.R.C[iv].P. 1029[(b) ("A general denial . . . shall have the effect of an admission.")].

Second, Hadden proposed a buyer at the time of the hearing, after having had formal notice for almost a year that [the County] would be seeking a buyer. Moreover, Hadden had years to find a buyer before January 2020[,] as Hadden and the community witnessed the abandoned [Property] inexorably deteriorate, rot, and collapse.

Third, it was simply not believable that the ephemeral plan was realistic or based on a sound financial foundation, or any realistic financial foundation. Moreover, the last minute nature of the [P]roposal belied its viability and undermined its credibility.

8

Rule 1925(a) Opinion at 3-4.[5]  This Court discerns no error in the trial court's reasoning.  Hadden did not present substantial evidence demonstrating that the terms of the Conservator's proposed sale were ostensibly unacceptable and unreasonable under Section 9 of Act 135.

Moreover,

"[r]egarding the 'abuse of discretion' standard of review, th[e Pennsylvania Supreme] Court has explained that the term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the [trial] judge." *Commonwealth v. Gill*, . . . 206 A.3d 459, 466 ([Pa.] 2019) (internal quotation marks and citation omitted).  "Absent an abuse of that discretion, an appellate court should not disturb a trial court's discretionary ruling." *Id*.  "An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id*. at 466-67.

*Commonwealth v. DiStefano*, 265 A.3d 290, 297-98 (Pa. 2021).

This Court cannot conclude that "the [trial] court [] reached a conclusion which overrides or misapplies the law, or [] the judgment exercised [was] manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *DiStefano*, 265 A.3d at 298 (quoting *Gill*, 206 A.3d at 467).  Rather, in the absence of substantial evidence that the sale's terms and conditions were unacceptable and/or unreasonable under Act 135, the trial court properly granted the Sale Petition.  Accordingly, the trial court did not abuse its discretion.

---

[5] The Reproduced Record is not cited here because the Reproduced Record is missing the third page of the trial court's opinion.

For all of the above reasons, the trial court's order is affirmed.

_____

ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Montour                 :
                                       :
            v.                  :
                                         :
Hadden, LLC,                :     No. 60 C.D. 2021
              Appellant        :

## O R D E R

AND NOW, this 16th day of August, 2022, the 26th Judicial District, Montour County Branch, Common Pleas Court's December 8, 2020 order is affirmed.

_____

ANNE E. COVEY, Judge